NEW JERSEY MISCELLANEOUS REPORTS. 893

N. J. Dept. Labor—Jedmacz v. W. H. Gahagan Co.

NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

THODER JEDMACZ, PETITIONER, v. W. H. GAHAGAN COM-
PANY, INCORPORATED, RESPONDENT.

**Petitioner, a Laborer Doing Heavy Work at Night, While Dry-
ing His Clothing After Exposure, Fell Asleep in Front of
an Open Fire and Thereby Exposed His Clothing to Flames
—He was Burned, Resulting in Permanent as well as Tem-
porary Disability—Held, That the Injury Resulted in Course
of Employment.**

On petition, &c. On determination, finding of fact and
rule for judgment.

For the petitioner, *David Roskein.*

For the respondent, *Bertis S. Horner.*

\*      \*      \*      \*      \*      \*      \*      \*

On December 9th, 1925, the petitioner was employed by
the respondent at a weekly wage of $40 as a laborer in and
about its business of dredging, and while so engaged in the
course of his employment at Port Newark, New Jersey, peti-
tioner was burnt and sustained injury to his left arm; that
the respondent had due knowledge of the occurrence thereof.

It appears from the testimony of the petitioner and of the
several witnesses on his behalf, that the petitioner began his
employment at four o'clock in the afternoon of December 8th,
1925, which employment or shift was to continue for sixteen
hours up and to eight o'clock in the morning of December
9th, 1925. The weather was extremely cold and the peti-
tioner had been engaged in heavy manual labor. He con-
tinued working until shortly after midnight when with the
other members of his crew, together with the foreman, built
a fire in the out-of-doors, preparatory to drying their clothes
and other wearing apparel which had become heavily wet due
to the atmospheric conditions and nature of the employment.

The petitioner and other men were about this fire. After sitting down, the claimant unconsciously dozed off and fell asleep, and a few minutes thereafter awakened finding himself afire. I find as a matter of fact that the falling asleep was a natural occurrence in the case of a man who was engaged in his type of work for the whole evening in the cold and at the time was sitting in a hot place.

Petitioner was assisted and aided by a fellow-workman who was one of the petitioner's witnesses at this hearing and by the foreman who sent the petitioner to his home. The petitioners' relief man on the day shift also testified in his behalf, and stated how he found him missing the next morning and his clothes in the shanty on the respondent's premises at Port Newark, New Jersey, with the flesh still clinging to the burnt coat in the shack in which he, petitioner, had changed his clothes.

The testimony of the respondent attempted to show that the petitioner was not in the employ of the respondent at the time of the accident, but I find, as a matter of fact, upon all the testimony in this case, that the petitioner was at the time of the accident in the employ of the respondent company.

The case of *Dixon* v. *Andrews,* 91 *N. J. L.* 373; 105 *Atl. Rep.* 410, confirmed by the Court of Errors and Appeals in 92 *N. J. L.* 512; 105 *Atl. Rep.* 893, is the leading case in New Jersey, and together with the case of *Bryant* v. *Fissell,* 86 *Id.* 460, held that an accident arises out of and in the course of the employment if it occurs while the employe is doing what a man so employed may reasonably do within the time in which he is employed, and at a place where he may reasonably be at that time.

The duties of the claimant were such as subjected him to exposure to the elements in the open spaces known as Port Newark, in a cold winter's night, and he had been working for approximately eight hours at the time. Claimant sat down with the rest of his crew and with his foreman, exchanging stories, resting and drying their clothes and other matters of personal interest. After sitting down, the claimant dozed off and fell asleep, and a few minutes thereafter

was awakened by finding himself afire. The falling asleep of the claimant was natural in the case of a man who was engaged at hard work for the whole evening in the cold, and at the time was sitting in a hot place. The falling asleep was not the result of any conscious effort on the part of the claimant, but came simply from drowsiness which came over him as a result of his previous exertions to which he had been exposed and the heat in which he was sitting. The fire resulted in the burns from which the petitioner is now suffering. The petitioner was injured while on duty in his work, and while waiting for an opportunity to continue the services of employment. The accident occurred when the claimant was at a place where he might reasonably be, there was no turning aside on his part, no attempt to serve ends of his own. The fact that he fell asleep under the circumstances does not bar his claim.

The man's duties involved periods of leisure during which he was expected to kill time as best he might. The acts of ministration to himself, such as relieving his hunger or protecting himself from excessive cold, and drying his clothes, performance of which while at work are reasonably necessary to his health and comfort are incidents to his employments, and acts of service therein within the Workmen's Compensation act, consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities. 1 *Hon.* 379, 384. To protect himself from undue or unnecessary exposure to the cold was a duty that he owed to his master as well as to himself, and it does not follow that he left his master's employment because he negligently dozed off and was burnt. I find that the petitioner has sustained an accident within the meaning of the Workmen's Compensation act of New Jersey, which accident arose out of and in the course of the petitioner's employment with the respondent.

The petitioner was compelled to remain out of work for a period of four months as a result of the injuries sustained by the accident.

It appears from the testimony that the petitioner was treated by Dr. Joseph Michalski for injuries to his arm im-

mediately after the accident, and continued treating him for a period of approximately four months. He found the petitioner suffering from a second degree burn to his left arm and elbow, extending anteriorily and posterially four inches above the elbow and three inches below the elbow. The physician at the time found the petitioner in terrific pain and carrying a high fever. Dr. Michalski estimated the disability between twenty-five and thirty per cent. loss of the arm, and his charge for services was one hundred and eighty dollars ($180), which I find is a reasonable charge.

Dr. Max Singer examined the petitioner, and from his testimony he concluded that the petitioner was suffering from twenty-five per cent. permanent disability of the left arm.

The respondent's physician, Dr. Shepard, examined the petitioner at the date of trial and testified to the loss of fifteen to twenty per cent. of partial permanent disability of the left arm.

From all the testimony, I find, as a matter of fact, that the petitioner sustained a second degree burn to the left arm extending four inches above the elbow, and three inches below the elbow, the said scarring of the skin which is still plainly visible, and the adhesion to the muscles, and I find that the petitioner sustained temporary disability from December 9th, 1925, to and including April 1st, 1926, a period being sixteen weeks. for which the petitioner is entitled to receive temporary disability for a period of sixteen weeks at the compensation rate of $17 per week, and I further find that the petitioner sustained partial permanent disability to the extent of twenty-five per cent. of the usefulness of his left arm for which the petitioner is entitled to receive compensation for a period of fifty weeks at the rate of $17, beginning April 1st, 1926.

I further find and determine as follows:

1. That on December 9th, 1925, the petitioner was in the employ of W. H. Gahagan Company, respondent herein set forth.

2. That the petitioner on December 9th, 1925, met with an accident arising out of and within the course of his em-

ployment with the respondent, that the injury was not self-inflicted, nor was intoxication the proximate cause thereof.

3. That the respondent had due knowledge of the said accident and that the petitioner was at the time earning $40 per week.

4. As a result of the said accident the petitioner was injured and sustained temporary disability during the period of sixteen weeks at the compensation rate of $17 per week.

5. I find as a result of the said accident the petitioner was injured and sustained injuries which are of a permanent nature, and, as a result thereof, sustained an impairment to the extent of twenty-five per cent. partial permanent disability of the left arm, being a period of fifty weeks at the compensation rate of $17 per week, being a period from April 1st, 1926, to March 25th, 1927.

It is therefore on this 16th day of March, 1927, ordered, that judgment be entered in favor of the petitioner and against the respondent for temporary disability from December 9th, 1925, to April 1st, 1926, being the sum of two hundred and seventy-two ($272) dollars, being compensation due for temporary disability; and it is further

Ordered, that the respondent pay to David Roskein, Esq., attorney for the petitioner, the sum of $100 for services rendered in connection with the filing of the formal petition, and $50 payable by the petitioner; and it is further

Ordered, that judgment be entered in favor of the petitioner and against the respondent, and that the respondent hereby pay to the petitioner compensation hereby awarded him for permanent disability sustained by him for a period of fifty weeks from April 1st, 1926, to and including March 25th, 1927, in the sum of eight hundred and fifty ($850) dollars, being twenty-five per cent. of partial permanent disability of the left arm, being equivalent to fifty weeks at the compensation rate of $17 per week; and it is further

Ordered, that the respondent pay the medical bills of the petitioner incurred as a result of this accident, due to Dr. Joseph Michalski in the sum of one hundred and eighty ($180) dollars; and it is further

Ordered, that the respondent pay to the petitioner on behalf of expenses incurred by the petitioner for medical testimony in this matter in the sum of $75.

HARRY J. GOAS,
*Deputy Commissioner.*